The next matter, number 22-1944, United States v. Antonio Santonastaso. At this time, would counsel for the appellant please introduce himself on the record to begin. Thank you. May it please the court, my name is Jin Ho King and I represent Antonio Santonastaso. I would like to reserve one minute for rebuttal, please. One minute, you may. Thank you. We ask the court to reverse the judgments of conviction for three reasons. First two relate to insufficiency of the evidence for count two, false statements, and count four, witness tampering. And the third reason is related to the request to adopt the materiality definition from Maslin-Chang. I'm going to address all three, time permitting, but I will focus on the first two. So jumping right in. On count two, the evidence was insufficient on the false statements count because the false statements were not material. To be a material statement must have a natural tendency to influence the decision making. And here the statement charged was incapable of doing that. The charge statement was essentially that he had lied about not having stolen a helicopter, but that really had no bearing on any kind of investigation into whether or not he was presently flying a helicopter without proper licensing or proper certification. I'm not quite sure I understand that argument because why would not that false information have led the investigator on a wild goose chase trying to pin down whether there was any validity to his claims that he was part of a dark ops operation and had permission to be doing what he was doing. That certainly seems to be what influenced the root of the investigation. That's a great question. The root of the investigation is that whether he had a license to fly the helicopter. And whatever he says about black ops, things like that, it really has no bearing on whether he did in fact have a license. If he was part of a black ops operation and did not therefore need a license, that would be relevant. I'm not certain I understand the question. I'm assuming that if you're part of a black ops operation, it's so clandestine that they don't necessarily care if you're properly licensed as long as you can fly the equipment. And so it seems to me that it would have some bearing on the investigation. So I think that it would not in fact have any possibility of influencing a decision maker in this process. Because if that were the case, that would simply be outside the scope of whatever possible investigation they could make. So the fact is that if the FAA is making some kind of investigation into this area, all they can do is check whether there is a license or not. And if there is no license, really the follow-up is, was he flying a helicopter? But again, his false statements were not about, at least the charge false statements were not about whether he was flying. It was about whether he was licensed. Sorry, about the theft. But because the investigation was about the licensing, the statements about the theft would have no impact. In fact, could not possibly influence that decision making process. This is regardless of whatever. You're saying could not influence the decision making process, but I don't think that's our standard. It's could it affect the investigation in the abstract? And I fully accept everything you're saying about his statements, and even I could add more. The investigators thought he was delusional when he was making those statements, that he sort of went off on an illogical rant, I think. I don't think they call it rant, but I think they called it illogical. That it didn't really matter to their investigation. But what the government's response is, is that they were trying to verify that the FAA, the evidence regarding the FAA license was correct. And don't those statements relate, at least in small part, to sort of checking the box on whether what the FAA had on file was correct or not? Well, so what the FAA had on file were reasons why his license had been revoked. Again, I'm simplifying this because there are levels of licensing. But they had information about the revocation of his airman certificate. And that information revealed that it had nothing to do with a theft. It was essentially about around the time of that theft, in fact related to that theft, was he flying with proper certification and other related kind of administrative reasons for revocation. Because, in fact, theft of a helicopter is perhaps surprisingly not by itself necessarily a basis to revoke. There may be other reasons. Counsel, my understanding was that the FAA decides they have in their records documents showing that they in fact did revoke his license. And served it on him and then sent him several letters saying you need to come and give us the license back. So they go out to visit him and talk to him because they just want to make sure there's no mistake. And there's no way that he somehow got a license again and their records are somehow incorrect. That's my understanding of why they go. So, again, I'm just struggling, like my colleagues, I'm struggling to understand why when your client then says, oh, you know, I didn't steal this helicopter, that was just, you know, completely not true, et cetera, et cetera, and they're looking into generally if a mistake has been made in their own documents, why doesn't that at least have the possibility of misdirecting them, which is part of the standard? How is it so totally separate from anything they were looking into? Well, and it's because the statement about the theft was not part of. Let's grant you that it's not directly on point, but that's not the standard. The standard is can it conceivably impact an investigation in an abstract sense or misdirect? So why can't it conceivably misdirect? Sure. Well, let's talk about first in the abstract. I think the way that I read the cases concerning what we think about an investigation in the abstract is we kind of set aside what the investigators may know already. You know, I think most of the cases essentially revolve around defendants arguing, well, this couldn't have influenced them because they already knew I was lying and that, you know, we ignore what the investigators knew. Even if we ignore what the investigators knew, the defendant would still fall outside the scope of Section 1001 because the core investigation is whether he had a license to fly. But does the case law say that it has to be related to the core investigation? Again, I think that's what we're trying to understand from you, right? Certainly things that relate to the core of the investigation are material, but the question here is when a statement is made that's maybe not at the core, but it's still generally it's about a helicopter and was he flying it legally, why is that completely outside the bounds? Well, I think that's – if we draw the boundaries to why, right, we pull in a lot of conduct that would otherwise perhaps not be condoned or should not be condoned but is not federally criminal. And I think that's really the difficult part about this case. Where do we draw that line and what consequences are there for drawing that line further and further away from what we were calling the core investigation, right? Here, the FAA, their goal is to make sure that the people who are flying aircraft are appropriately trained and have proper licensure, right, that the aircraft that they're flying are safe. And so that was the nature of the investigation. And in doing that, don't they need to rely that the statements that people are communicating to them about their flying are true? Yes, but the one key issue here is that the licensing, the certification process is something that they control, right? So it's not what that person says about certification. It's whether there is a certificate or not. But does that argument suggest that nothing he said would have been material? Because their own, you know, documents control? Well, not necessarily, right? Because, you know, if they're investigating whether he was flying without proper certification, the certification component of it is within their knowledge, right, and within their unique knowledge. But whether or not he knew, whether or not he was actually, in fact, flying, that's something that they would have to go and investigate. And so false statements relating to those would be more likely to fall within the ambit of 1001. Can I move you to count four? Yes. Can I ask you, did you, did your client ever object below to the jury instruction on the intent element for count four? I, not, not in, the, my client did provide a different instruction, but I don't think that it was meaningfully different from this. And didn't object to the instruction that was actually given, right? My memory is not. So our focus is on the sufficiency of the evidence on count four as opposed to the instruction itself. Can I ask you another question about that? As I understand your argument from the brief, if you distinguish between the type of potential offenses your client had in mind, whether it was state or federal, why would that matter if the defendant knows whether, what type of crime the agents are investigating? And are you saying that the government has to prove that he specifically intended to interfere with an investigation into a federal crime as opposed to a state crime? Yes, although I think we can perhaps simplify that a little bit. I do believe that the government has to prove intent related to the offense, intent to thwart an investigation into an offense. That's at the very least, and that's from the plain language of the statute. I think it's also that they should prove intent to commit, sorry, intent to thwart an investigation into a federal offense. Because again, that is the language of the statute. But I understand that the case law may suggest otherwise. And so if we look at, I think it's, I'm sorry, if the case law may suggest otherwise, I'm not sure I'm following your argument then. Yeah, so the key here is then that distinction between a state civil matter, which is, again, our argument is that his intent was concerning that state civil matter, not a offense, federal or otherwise. I think you were going to say something about Baldaga, and I'm wondering what it was. Because I thought what Baldaga said was it didn't really matter whether the defendant knows that the federal agents are investigating. I think that's right. So one important aspect of the statute is that there's a carve out for the government, meaning that they do not have to prove intent related to the identity of the law enforcement officers. The statute specifically says the government does not have to prove that the defendant knew that the officers were federal agents. But there's no such carve out for that offense component. And again, the offense component is part of the statute. And in fact, the way that it's written, it's intent and then a whole long section including federal offense. But how is the evidence not sufficient for a rational jury to conclude that your client knew it was about a federal offense since he had been interviewed by agents from the FAA? So the charged conduct here, it relates to that phone call, right, the phone call to Mr. Plouffe. And the content of that call that was testified to at trial was that he was calling concerning someone from the Massachusetts Department of Transportation, that there was an injunction, and that if he flew, he could be fined. And so essentially not to say anything about that. Absolutely. But why couldn't a rational jury conclude that your client, for example, decided to focus on the injunction and his neighbor's complaints because he thought that might be a more sympathetic account to give to Mr. Plouffe and make it more likely that he would do what he wanted, which is not speak to the agents? Why couldn't a rational jury conclude that there were many, many other pieces of evidence making it clear that he knew he was being investigated for a federal issue? Well, and that's because it relates to his intent, right? It's about intent, and the only thing that we can go into the evidence of his intent are essentially the circumstantial evidence about his conduct and his statements. I know my time is up. May I conclude? Yes, please. And so to answer that question is that his statements reveal that his intent related to that civil matter, not so much the criminal. But his statements are not the only pieces of evidence in the case, correct? I mean, you said the jury can also rely on circumstantial evidence. It's not limited to what he said. That's right. That's right. It's just the strongest evidence, and the other evidence is open to different inferences, and so we should not draw them all in that way. Thank you. Thank you. Thank you, counsel. At this time, the counsel for the government will please introduce himself on the record to begin. Good morning, Judge Montecalvo, and may it please the Court, I'm Mark Quinlivan on behalf of the United States. Let me begin with count four and recount the evidence that was in front of the jury. So Special Agent Mary Beth Roberts of the Office of the Inspector General of the Department of Transportation interviews the defendant with another special agent. She identifies herself as a federal law enforcement officer, tells the defendant he doesn't have to speak with them, advises him that anything that he says that's untruthful might subject him to a criminal offense, and provides him with her business card, which identifies her role as a special agent with the U.S. Department of Transportation. She doesn't just flash the badge. She actually leaves the card with him. They then have a long interview about the events related to the theft and the revocation of the defendant's airman certificate, as well as matters relating to his application for a renewed medical certificate. We then fast forward a month. The agents go to an airport in Connecticut where the defendant had said that he had left his logbook. They interview the airport manager who tells them that he's a friend of the defendant and also tells them about another airport in Southbridge, Massachusetts, which is where the agents then go. It's there that they're interviewing Mr. Kloof. The defendant calls Mr. Kloof while the agents are there and says words to the effect that there's a female agent who's asking questions about me at airports, and either don't tell her anything or don't tell her that I know her. Don't say anything. Counsel, does the record show how the defendant may have found out about the fact that the agents were going to that airport? Not conclusively, but I think the jury could easily infer from the testimony how the defendant found that out. And I'd point to two points in the record. The first is that during Special Agent Roberts' testimony on cross-examination, she was asked and confirmed that the defendant and Mr. Toutant were friends. So that's at pages 192 to 193 of Volume 2 of the record appendix. And then at another point in her testimony, and that's at page 173 of the same volume, she testifies that they learned about the Southbridge Airport from Mr. Toutant, during their discussions with Mr. Toutant. So a rational jury could easily infer from that testimony that Mr. Toutant had tipped the defendant off, that the agents had interviewed him, and that they were going to his airport next. Just to clarify on this point, one of the questions, the defendant did, with respect to Count 4, submit a proposed instruction that was different than the one given by the District Court. But it was an instruction that was not consistent with the law. It basically said that the government must prove that the defendant knew it was a federal investigation, and that if he thought it was state law matters, the jury must acquit. That instruction is not either this court's Baldesia test, nor is it consistent with the test set out by the Supreme Court in Fowler for a different provision of Section 1512. Now, I do want to clarify, the defendant did object to the failure to give that instruction. But again, it's not a correct statement of the law, either under this court's extant jurisprudence, or under the Fowler standard. Counselor, I think the appellant's argument about the statement is that, given the specificity of his statement, specifically referencing the state court injunction, that a reasonable jury could not infer that he had the intent to be trying to impede a federal investigation. Well, two answers. That's part one, and part two would be, he conceded that it might not matter anyway. So if you could address both aspects of that. Yes, Judge Thompson. First, that a jury could infer, given that Special Agent Roberts had met with the defendant and interviewed him about multiple matters relating to what was plainly a federal investigation, the rational jury could find that when he instructed Mr. Pluth not to say anything to the female agent who was visiting airports, that that's what he was referring to. And even taking a step back, even if it's perhaps the case that the jury might think he had state law matters in mind, what this court's test in Baldesia states is that the defendant attempted to hinder, delay, or prevent the communication of information to a federal law enforcement officer as to an investigation that happened to be federal. So under any set of circumstances, I think the defendant's claim fails in that regard. I would note as well that... In other words, you're saying that even if it was state-oriented, that it necessarily had an impact on how the feds conducted their investigation? No, Judge Thompson. I'm saying, number one, that the rational jury could easily have inferred that the defendant was telling Mr. Pluth not to speak to the agent because he knew she was a federal officer investigating federal matters. And that even if he also mentioned a state law injunction, that doesn't discount the possibility that he was also telling her not to talk about matters that were federal. And then taking even a further step back, what this court's test in Baldesia states is that it's the prevention of communications to a federal law enforcement officer as to a matter that happened to be federal. So even if he had state law matters also in mind, that doesn't remove him from the scope of Section 1512b3. Could you jump to count two? Yes. And maybe just start off by your best arguments establishing materiality.  And let me begin by just correcting a statement, which is that the theft of the helicopter had nothing to do with the violations in the case. That's incorrect. The jury saw Exhibit 3, which identifies the violation as the theft of an airplane that the defendant then flew from Norwood Airport without the proper medical certificate or rotorcraft rating. So the theft of the aircraft and the flight without the proper authorizations are basically one and the same. So when the defendant said to the FAA safety investigator that he had been a member of this special ops team and the theft of the plane was a cover-up and all a big misunderstanding that he would be able to clear up when he talked to his team members, that had a natural tendency to influence the investigation in any number of ways. I mean, the FAA safety inspector testified he had no way of verifying whether or not the defendant was an undercover member of the DEA or the CIA. It could have thwarted the investigation from the get-go. Alternatively, again, because the violation was tied to the theft, the investigator may have said, I want to go back to Norwood Airport and start from square one and look to see whether this flight ever took place. Or to take another example, it may have been intended or have led the safety inspectors to say, well, this guy was serving his country overseas. We've got a lot of matters on our plate. This isn't one that I think is worth going forward on. So under the natural tendency to influence, it was easily satisfied and this court has also said that the attempt to misdirect an investigation satisfies the materiality standard under Section 1001, even if it has no possibility of accomplishing that objective. And that's, I would say, squarely the case in here. And is your misdirection argument in part that it could have just sent the investigator on a wild goose chase? Is that essentially what you're saying? That's absolutely right, Judge Rickleman. I'd be happy to answer any other questions, including about the Mads Lenjack claim. Yes, and maybe with this question in mind, does the defense have a point that this court did not explicitly address Mads Lenjack's application to 1001A prosecution in the two cases that you identify? He is correct in that. The two cases are Chen and Rivero. They don't discuss Mads Lenjack, but that doesn't remove them from the application of the law of the circuit doctrine. And here's why. Because under the first exception, it has to be a decision that's subsequently announced. And under the second exception, it has to be a decision that postdates the original decision. And so Mads Lenjack was decided in 2017, Rivero Ortiz was decided in 2020, and Chen was decided in 2021. So neither of those exceptions are implicated in these circumstances. And just to give an example of how this plays out, so we cited the Barbosa case in our brief. And that's a case where this court held that a Massachusetts drug statute qualified for purposes of the Armed Career Criminal Act, even though the defendant had been prosecuted in Massachusetts District Court and not Superior Court. So this court originally so held in 2002 and then reaffirmed that holding in several subsequent decisions. And the defendant in Barbosa identified two Supreme Court decisions, one from 2008 and one from 2011, that he said called the original decision into question. And this court rejected that claim under the law of the circuit doctrine because some of the decisions that had reaffirmed the original decision postdated both the Supreme Court decisions at issue. And this court admittedly then said if anything more was needed, and we do not think anything is, this court noted that those decisions had discussed the two Supreme Court decisions at issue. But again, this court's threshold determination was that the claim failed under the law of the circuit doctrine because the two Supreme Court decisions predated extant circuit precedent that had simply reaffirmed or applied the original decision. So for those reasons, the fact that the two cases here didn't discuss Maslin-Jack doesn't remove them from application of the law of the circuit doctrine. Can I ask you a more fundamental question? What is your position on whether Maslin-Jack should even be relevant here? It was interpreting a statute that didn't have the term material in it, and it's a divided opinion, and the opinion of the court is only the first half of the opinion as I read it. And for that section, the actual opinion of the court, it seems like what the court is saying is that the government was arguing there was no materiality requirement at all, and the court rules there is a materiality requirement even though the word material isn't in the statute, and we see that by the natural operation of the language. So do you think it's relevant to the interpretation of the statute here, which obviously has an express materiality provision? I don't think it's relevant, Judge Rickleman, and the only quibble I would have is I don't think the Supreme Court took Maslin-Jack to determine whether there was an implied materiality requirement. That's not what the court ultimately decided. The court found that the word procures in Section 1425A followed by the adverbial phrase contrary to law, the best or most natural reading was that there was basically a means and fit between the illegal act and the procurement of naturalization, so the government had to show a causal connection between the two. So, Judge Rickleman, you're absolutely right. The word materially doesn't appear in Section 1425A Conversely, neither the word procures nor the phrase contrary to law appear in Section 1001. So there's... Has any circuit relied on Maslin-Jack? No. In interpreting this statute that's at issue here? No. In fact, I found no court of appeals or district court that has done so. The only case I've seen is an unpublished decision from the District of Hawaii that basically said that the objective standard under Section 1001 was consistent with Maslin-Jack but didn't apply the causal connection Maslin-Jack cast to Section 1001. Any questions? Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? You have one minute rebuttal. Thank you. Geno King for Mr. Santanastazzo. Two very brief points. First, it was my mistake concerning the jury instructions. Thank you to the AUSA for correcting that. Second, I just wanted to make a brief comment about the natural tendency to influence. If it is sufficient to misdirect someone simply by saying, maybe this guy's a nice person, we don't have to go after them, then pleasantries like, it's good to see you, I'm happy to have you in to talk about this case, let me offer you a cup of tea, I don't have any coffee, if those statements are false, they could also have a tendency to mislead if the agent will say, well, this is a nice person, maybe we don't have to go after that person and influence the investigation that way. I don't think that, obviously this is a very contrived example, but I think that the concept cannot possibly extend to that level. And so for those reasons, we ask that the courts rule in Mr. Santanastazzo's favor. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.